NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| COLUMBUS LIFE INSURANCE COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> JC MARKETING PARTNERS, INC., *et al.* <br><br> *Defendants*. | Civil Action No. 25-12758 <br><br> **OPINION** <br><br> June 16, 2026 |

**SEMPER,** District Judge.

**THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Defendant Jenny Cheng, M.D. ("Dr. Cheng" or "Defendant") on September 19, 2025. (ECF 19, "Motion" or "Mot.")[1] Defendant seeks dismissal of the six counts asserted against her for alleged violations of 18 U.S.C. § 1962(c)[2], the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I); 18 U.S.C. § 1962(d), conspiracy to violate RICO (Count II); N.J. Stat. Ann. § 17:33A, the New Jersey Insurance Fraud Protection Act ("N.J.I.F.P.A.") (Count V); fraud (Count VI); tortious

---

[1] Dr. Christopher Wang, M.D., also filed an untimely motion to dismiss Plaintiff's Complaint on November 18, 2025, asserting essentially the same arguments as Dr. Cheng. (ECF 28.) Dr. Wang's motion was filed *pro se*, and he is since represented by an attorney. However, counsel for Dr. Wang has not requested leave to amend the motion filed on November 18. Therefore, the Court's analysis and rulings on Dr. Cheng's Motion apply to Dr. Wang as well.

[2] 18 U.S.C. § 1964(c) provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit …." 18 U.S.C. § 1964(c).

1

interference (Count VII); and unjust enrichment (Count VIII).  (ECF 1, "Complaint" or "Compl.")

Defendant seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure ("Rule")

12(b)(6), arguing Plaintiff fails to adequately plead facts connecting her to the alleged scheme.

(*See generally* Mot.)  Cheng also seeks dismissal of the RICO claims on the grounds that Plaintiff

fails to meet the heightened pleading standard to allege predicate acts under Rule 9(b).  (*Id*.)  This

Motion was decided upon the submissions of the parties, without oral argument, pursuant to

Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below,

Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Columbus Life Insurance Company "Columbus Life" offers life insurance policies to

individuals, families, and businesses looking to protect themselves from loss.  (Compl. ¶ 20.)

Columbus Life uses a national network of independent representatives, producers, and general

agencies to find individuals who need a life insurance policy.  (*Id.* ¶ 21.)  In 2016, Defendants Jun

Rong Chen ("Chen") and Cui Cui Fang ("Fang") presented themselves to Columbus Life as

legitimate life insurance producers who owned the company Golden Cove Financial Group, Inc.

("Golden Cove").  (*Id.* ¶¶ 3-5.)  Columbus Life and Golden Cove entered into a Producing General

Agent Agreement ("PGA Agreement") in which Golden Cove was appointed as a general agent of

Columbus Life with authority "to solicit and submit business through Golden Cove's affiliated

---

[3] The facts and procedural history are derived from the Complaint ("Compl.")  When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).  The Court also considers any "document integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Finally, the Court considers matters of public record and undisputedly authentic documents attached to Defendant's motion to dismiss if Plaintiff's claims are based on the document.  *See Levins v. Healthcare Revenue Recovery Group LLC*, 902 F.3d 274, 279 (3d Cir. 2018).

network of producers." (*Id*. ¶ 23.) Golden Cove received commissions when individuals they produced entered into policies with Columbus Life. (*Id*.) On July 11, 2018, JMC Insurance Network, Inc. ("JMC Ins.") succeeded Golden Cove under the PGA Agreement. (*Id*. ¶ 25.) On March 8, 2024, JC Marketing Partners, Inc. ("JC Marketing") succeeded JMC Ins. under the agreement. (*Id*.) Fang and Chen allegedly collaborated with an extensive network of licensed insurance producers to procure policies for Columbus Life on behalf of JC Marketing. (*Id*. ¶¶ 6-13.) These individuals include Jason Huang, Jannett Yang, Bi Jin Chen, Feng Zeng Chen, Min Juan Chen, Bang Liu, Yan Ping You, Hng Yan Zhang (collectively, "the Independent Producers"). (*Id*.)

Plaintiff claims that between 2016 and 2024, Fang and Chen submitted almost 600 life insurance applications to Columbus Life through Golden Cove, JMC Ins., and JC Marketing, which resulted in the issuing of approximately 250 policies worth over $160 million. (*Id*. ¶ 26.) Plaintiff alleges these policies resulted in over $5 million in commission for Fang, Chen, and the Independent Producers. (*Id*.) Plaintiff alleges that while JC Marketing presented itself as legitimate insurance professionals, the company "routinely and systematically conspired with others, like Dr. [Christopher] Wang and Dr. [Jenny] Cheng … in order to defraud life insurance carriers, including but not limited to Columbus Life." (*Id*.) Plaintiff alleges JC Marketing targeted Chinese nationals who recently immigrated to the United States, and forged documents to present these individuals as healthy, high-net worth business professionals eligible for expensive life insurance policies. (*Id*. ¶ 33.) With respect to Drs. Cheng and Wang, Plaintiff alleges the doctors "conspired with Defendants to submit fraudulent medical records to Columbus Life in support of life insurance applications submitted through JC Marketing and its predecessors." (*Id*. ¶¶ 14-15.) Plaintiff claims this conduct included conspiring with JC Marketing to submit medical paperwork

3

that falsely reflected medical appointments and procedures that never occurred or were fabricated to reflect inaccurate results.  (*Id*. ¶ 48.)  According to Plaintiff, Golden Cove, JMC Ins., JC Marketing, Fang, Chen, Dr. Cheng, Dr. Wang, and the Independent Producers form an association-in-fact enterprise, the "JC Marketing Enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  (*Id*. ¶ 75.)

Plaintiff initiated this action on July 3, 2025.  (Compl.)  Dr. Cheng moved to dismiss on September 19, 2026.  (Mot.)  Plaintiff opposed on November 17, 2025.  (ECF 27, "Opposition" or "Opp.")  Dr. Cheng replied on November 24, 2025.  (ECF 31, "Reply.")[4]

## II.      LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint for failing "to state a claim upon which relief can be granted" as required by Rule 8(a).  Fed. R. Civ. P. 12(b)(6), 8(a). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, 556 U.S. at 678.  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff

---

[4] Dr. Wang filed a motion to dismiss the Complaint on November 18, 2025.  (ECF 28, "Wang Motion" or "Wang Mot.")  Plaintiff opposed Dr. Wang's Motion on December 22, 2025.  (ECF 34, "Wang Opposition" or "Wang Opp.")  Because Dr. Wang's briefs make essentially the same arguments as Dr. Cheng's brief, his filings are not cited in this Opinion.

must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## B. <u>Pleading a RICO claim under the Rule 9(b) Standard</u>

The text of 18 U.S.C. § 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To prove a claim under § 1962(c), a plaintiff first must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). The first two elements are evaluated under the Rule 8(a) pleading standard described above. *See Bell v. Dave*, No. 21-11816, 2022 WL 2667017, *6 (D.N.J. July 11, 2026). The Court now clarifies the pleading standard for elements three and four, which requires a plaintiff to allege racketeering activity under the heightened pleading standard of Rule 9(b). *Id.*

5

The RICO statute defines a pattern of racketeering activity as "at least two acts of racketeering activity … within 10 years." 18 U.S.C. § 1961(5). These two acts are known as "predicate acts" or "predicate offenses." *See Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) ("[N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern."). When the predicate acts asserted are mail and wire fraud, as in this case, "plaintiffs are subject to the heightened pleading standard for fraud set forth in Fed. R. Civ. P. 9(b), which states that 'a party must state with particularity the circumstances constituting fraud.'" *Hlista v. Safeguard Properties, LLC*, 649 F. App'x 217, 221 (3d Cir. 2016) (quoting Rule 9(b)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, Rule 9(b) requires that a plaintiff allege "all of the essential factual background that would accompany the first paragraph of any newspaper story— that is, the who, what, when, where, and how of the events at issue.'" *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)). Therefore, Plaintiff must plead with particularity at least two instances of fraud committed by Defendant to satisfy elements three and four of a civil RICO claim.

III.    **ANALYSIS**

A.  **RICO Claim (18 U.S.C. § 1962(c)) (Count I)**

Count I alleges RICO violations against all Defendants under 18 U.S.C. § 1962(c). (Compl. ¶¶ 75, 76.) Dr. Cheng argues Plaintiff failed to adequately plead facts showing she "participated in the alleged enterprise or engaged in racketeering activity." (Mot. at 7.) She also asserts Plaintiff failed to sufficiently allege fraud as a predicate act under Rule 9(b). (Reply at 8.) Plaintiff argues the allegations in the Complaint against Dr. Cheng are sufficient to establish her

6

involvement in the JC Marketing Enterprise, and Defendant cannot dispute the existence of the enterprise.  (Opp. at 6-7.)  The Court will first analyze whether Plaintiff has sufficiently alleged Defendant participated in two predicate acts of fraud.

Defendant argues Plaintiff failed to meet the Rule 9(b) standard in alleging mail and wire fraud because the paragraphs in the Complaint pertaining to fraud either fail to mention Defendant, or only assert conclusions unsupported by facts.  (Mot. at 19.)  Plaintiff argues the Complaint satisfies the heightened pleading standard under Rule 9(b) because it alleged the "*scheme* uses mail and wire communications" and Defendant is a vital part of the scheme, despite not physically being the one to mail the falsified documents to Columbus Life.  (Opp. at 11.)  The Court finds Plaintiff failed to show Defendant engaged in mail or wire fraud with the requisite particularity.

To plead wire fraud as a predicate act, a plaintiff must show "(1) the existence of a scheme to defraud; (2) the use of the mails … in furtherance of the fraudulent scheme; and (3) culpable participation by the defendant, that is, participation by the defendant with specific intent to defraud."  *U.S. v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005).  Plaintiff has adequately plead facts showing the existence of a fraudulent scheme which used electronic communications to defraud it.  (Opp. at 11.)  However, the Complaint fails to plead facts showing Defendant participated in the falsification of the records sent to Columbus Life for the purpose of furthering the scheme.  As noted by the court in *Dobson*, "the relevant inquiry is not whether the defendant acted knowingly in making *any* misstatement, but whether she did so with respect to the overarching fraudulent scheme."  *Dobson*, 419 F.3d at 237.  It is insufficient to allege misrepresentations were made to Columbus Life without specifying the nature or subject of the alleged fraud.  *See Hlista*, 649 F. App'x at 221. ("[T]he plaintiff must plead or allege the date, time and place of the alleged fraud

7

or otherwise inject precision or some measure of substantiation into a fraud allegation.") (quoting

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Plaintiff argues it has "adequately pled common law fraud against Dr. Cheng even under

the heightened pleading standard of Rule 9(b)." (Opp. at 17.) Defendant argues that Plaintiff

failed to satisfy the Rule 9(b) standard because the Complaint "rel[ies] instead only on blanket

legal labels … while grouping Dr. Cheng with the other defendants and their actions." (Reply at

8.) In support of the fraud allegations against Defendant, Plaintiff cites to Paragraphs 1, 47, 48,

68, 70, and 82(g). (Opp. at 17.) The Paragraphs are presented in relevant part below:

> Paragraph 1: …JC Marketing and the other Defendants formed an illegal enterprise and used it to abuse Columbus Life's confidences by, among other things, intentionally submitting fraudulent applications, falsifying medical records, and falsifying signatures ... Defendants' fraudulent conduct breached JC Marketing's contract and its affiliated producers' contracts with Columbus Life. Moreover, Defendants' conduct violates the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961-1968, the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A, et seq., and has resulted in Defendants being unjustly enriched at Columbus Life's expense.
>
> Paragraph 47: In order to place larger face-amount policies, Fang, Chen, Huang, and Yang also regularly conspired with physicians, including Dr. Wang and Dr. Cheng, to create and submit falsified records of primary care visits to Columbus Life.
>
> Paragraph 48: In fact, Yong Liang, Dr. Cheng, Dr. Wang, and other third parties routinely conspired with Defendants to submit falsified medical records to Columbus Life—e.g., that purposefully described medical examinations, tests, and visits that either never took place, or were falsified in order to defraud Columbus Life into issuing policies it would not otherwise issue.
>
> Paragraph 68: …Fang electronically submitted medical records to Columbus Life purporting to reflect that Yue Yin Zheng sat for a paramedical examination by Yong Liang on or around December 11, 2022, and that Yue Ying Zheng received regular primary care checkups by Dr. Cheng in 2018, 2019, 2020, 2021, and 2022, which records Fang, Yang, Yong Liang and Dr. Cheng knew to be falsified—i.e., because they described physical exams some or all of which never took place and/or did not accurately describe Yue Yin Zheng's health … Yue Yin Zheng was not seen by Dr. Cheng as indicated (the records appear falsified).

8

Paragraph 70: …On August 29, 2019, Yan Ping You faxed Columbus Life medical records purporting to reflect visits by Zuogun Shi with his primary care physician, Dr. Cheng, in 2018 and 2019, which Yan Ping You (and Dr. Cheng) knew to be falsified—because some or all of those visits did not take place and/or the records did not accurately describe Zuogun Shi's health. … Zuogun Shi was not under the regular care of Dr. Cheng (the records appear falsified).

Paragraph 82(g): Dr. Cheng served as the purported primary care physician in connection with at least a dozen JC Marketing policies and, in doing so, knowingly and actively misrepresented and falsified the insureds' health information and medical records.

(*See* Compl. ¶¶ 15, 28, 47, 48, 68, 70, 75, 76, 82(g).)  The six paragraphs listed above are primarily composed of conclusory allegations against Dr. Cheng.  Paragraph 1 does not mention Dr. Cheng and provides a general overview of the claims included in the Complaint rather than specific allegations that Dr. Cheng committed mail or wire fraud.  (*Id*. ¶ 1).  Paragraphs 47 and 48 rely on the conclusory assertion that Dr. Cheng "conspired" with the co-defendants, or the co-defendants conspired with her.  (*Id*. ¶¶ 47, 48.)  Simply alleging a defendant "conspired" with others, without more is a conclusory statement that fails even the less stringent Rule 8(a) pleading standard, let alone Rule 9(b).  *See Saucedo v. J. Fletcher Creamer & Sons, Inc.*, No. 19-00247, 2022 WL 22896092, at *4 (D.N.J. July 25, 2022) (holding a complaint that alleged "Defendants also violated N.J.S.A. 2C:41-2(d) by conspiring with others" without additional facts, failed to sufficiently plead a RICO conspiracy); *see also, Twombly*, 550 U.S. at 556 ("[A] bare assertion of conspiracy will not suffice."); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) ("We further reject bare statements that the Defendants purportedly 'conspired and agreed among themselves[.]'").

Plaintiff's Complaint is not saved by the fact several paragraphs allege Defendant conspired with the JC Marketing Enterprise to submit fraudulent or falsified medical records regarding specific policies.  (Compl. ¶ ¶ 68, 70, 82(g).)  Defendant is roped into the conduct of Fang, Chen, and the Independent Producers without facts showing Defendant knew the records were falsified or Defendant engaged in the falsification.  (*Id.* ¶¶ 68, 70.)  These barebone

9

allegations do not inform the Court of enough facts to raise the allegations above a speculative level.  Paragraph 82(g) is the only paragraph to state with certainty that it was actually Dr. Cheng who falsified documents—the rest of the paragraphs leave the possibility open that it was Fang, Chen, or one of the Independent Producers who actually falsified information.  (*See id.* ¶¶ 15, 28, 47, 48, 65, 68, 70).  Still, Paragraph 82(g)'s allegation that Defendant "knowingly and actively misrepresented and falsified the insured's health information and medical records," (*id* ¶82), fails Rule 9(b) because there is no allegation of what medical information was falsified.  "[A] plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Hlista*, 649 F. App'x at 221.  These allegations also fail to demonstrate Defendant had a role in *directing* the affairs of JC Marketing. Furthermore, Plaintiff's allegations fail to include "facts to support the conclusion that Dr. Cheng failed altogether to perform exams or else misreported her findings."[5]  (*See* Mot. at 10.)  The Court accepts as true that the documents were misreported, but no facts suggest this was done by Dr. Cheng.  This is materially different from the allegations asserted against the Independent Producers, who Plaintiff alleges entered into contractual agreements with Columbus Life, submitted life insurance policies through JC Marketing, and received commissions for their dishonest services.  (Compl. ¶¶ 24, 26.)

Plaintiff's allegations that Defendant knew medical records submitted to Columbus Life were false, (*id*. ¶¶ 68, 70), fail to satisfy any pleading standard.  It is true that Rule 9(b) allows

---

[5] Additionally, this Circuit has held that professionals who perform their own services, even if later found to be deficient, do not necessarily open themselves to liability under the RICO statute.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371 ("[T]he Supreme Court found that an outside accounting firm did not 'conduct or participate, directly or indirectly, in the conduct' of a farmer cooperative's affairs when it prepared and presented audit reports … that allegedly failed to disclose all of the information necessary to assess the solvency of the cooperative.").

knowledge to be plead generally, however, the Rule does not dispose of the requirement that knowledge must satisfy the Rule 8(a) pleading standard. *See Iqbal*, 556 U.S. at 686 ("Rule 9(b) requires particularity when pleading fraud or mistake, while allowing … knowledge, and other conditions of a person's mind [to] be alleged generally. But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.") (cleaned up). Under this standard, Plaintiff still has the burden of pleading facts that bring allegations of knowledge above a speculative level. *Twombly*, 550 U.S. at 555. The Court concludes that the allegations that Defendant knew JC Marketing submitted false medical documents or falsified them herself are too speculative to satisfy Rule 9(b). Thus, Plaintiff fails to establish that Defendant engaged in two predicate acts of fraud, and cannot establish a RICO claim against Defendant. Count I of the Complaint must be **DISMISSED** without prejudice against Defendant.[6]

### B.  <u>RICO Conspiracy Claim (18 U.S.C. § 1962(d)) (Count II)</u>

In Count II of the Complaint, Plaintiff alleges Defendant conspired to violate § 1962(c) "[b]y and through each of Defendants' close business and contractual relationships with one another, and their close coordination in the affairs of the Enterprise." (Compl. ¶ 97.) Defendant argues it is impossible for Plaintiff to establish a § 1962(d) claim when a § 1962(c) claim has not been pled. (Mot. at 20.) Plaintiff argues Count II is well-pled, and the Complaint "describes the general composition of the conspiracy" in which Defendant had an "instrumental" role by serving

---

[6] Since Plaintiff has failed to demonstrate fraud under Rule 9(b), Count VI of the Complaint alleging fraud by all Defendants is dismissed against Dr. Cheng. Because the allegations against Dr. Wang are essentially identical to the allegations against Dr. Cheng, Counts I and VI are dismissed against Dr. Wang as well. All claims that are dismissed against Dr. Cheng are also dismissed against Dr. Wang.

as the purported "primary care physician in connection with at least a dozen JC Marketing Policies." (Opp. at 14-15.) Plaintiff also notes that this Circuit has held that a court need not always find a defendant violated § 1962(c) to establish a conspiracy claim. (*Id.*)

The Court agrees that a conspiracy claim can sometimes stand without a violation of § 1962(c). *See In re Ins. Brokerage Antitrust Litigation*, No. 04-5184, 2007 WL 1062980, at *14 (D.N.J. Apr. 5, 2007) ("[A] particular defendant need not have violated the substantive provision in order to be liable himself or herself under the conspiracy provision, so long as some other defendant is liable under the substantive provision."). In *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001), the Third Circuit clarified that a § 1962(d) claim may proceed against a defendant who has not been shown to commit a predicate act if a co-defendant is held liable under the substantive RICO provision, "a RICO conspiracy defendant need not himself commit or agree to commit predicate acts … one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, *any* particular element." However, to be liable under § 1962(d), the defendant must have "*purposefully and knowingly* directed at facilitating a criminal pattern of racketeering activity" even if they do not satisfy every element of the substantive provision. *Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2011 WL 891871, at *9 n.4 (E.D. Pa. Mar. 10, 2011), *aff'd sub nom. The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27 (3d Cir. 2015). As previously discussed, Plaintiff has failed to allege any facts that show Defendant's knowledge of the scheme or that the medical records in question were falsified. Therefore, the conspiracy claim under § 1962(d) cannot stand, and must be **DISMISSED** without prejudice.

### C.  **N.J.I.F.P.A. Claim (N.J. Stat. Ann. § 17:33A) (Count V)**

Defendant argues that if Plaintiff fails to establish a federal claim under § 1962, the Court must dismiss the claims asserted under state law.  (Mot. at 20.)  Defendant claims that the state law claims should be dismissed because the Court lacks supplemental jurisdiction over the claims, and the considerations of judicial economy weigh against retaining jurisdiction.  (*Id*. at 20-21.)

The Court agrees with Plaintiff that the Court need not rely on supplemental jurisdiction in this matter.  Plaintiff states in the Opposition that there is complete diversity in this matter because the amount in controversy exceeds $75,000, Columbus Life is a corporate citizen of Ohio, and no defendants in this matter defeat complete diversity.  (Opp. at 16.)  These facts are also asserted in the Complaint.  (Compl. ¶¶ 2, 17.)  Defendant presents no other basis to dismiss the N.J.I.F.P.A. claims in the Motion or Reply.  (*See generally* Mot., Reply.)  Therefore, Defendant's Motion to Dismiss Count V of the Complaint is hereby **DENIED**.

### D.  **Tortious Interference Claim (Count VII)**

Defendant argues that Count VII must be dismissed against her because the Complaint fails to specify which tortious acts she specifically performed through improper group pleading.  (Mot. at 23.)  Plaintiff responds that the tortious interference claim is well-pled against Defendant because the Complaint alleges "the Defendants – which include Dr. Cheng – had knowledge of those contracts and intentionally induced breaches by participating in the scheme."  (Opp. at 19.)  The Court concludes that Plaintiff fails to state a claim of tortious interference.

Count VII of the Complaint relies heavily on group pleading.  (Compl. ¶ 150.)  "Defendants intentionally, maliciously, foreseeably, directly, and proximately, without justification, and through illegal means induced and facilitated the Independent Producers' breaches of their contract …."

(*Id*.)  Count VII also relies on portions of the Complaint that this Court has already held fail to state a claim against Defendant because no facts support she had knowledge of the Enterprise or actually falsified medical records.  (Opp. at 19, citing to Compl. ¶¶ 47-48, 68, 70, 82(g), 146, and 150.)  This Court has held that complaints that "refer to the actions of 'Defendants' generally, and do not otherwise provide enough information to satisfy Rule 8" must be dismissed.  *Chamblin Grp. Real Est. Ventures LLC v. Pina*, No. 23-22655, 2025 WL 1135223, at *3 (D.N.J. Apr. 16, 2025); *see also, Freeman v. Amazon.com Servs., LLC*, No. 24-8181, 2025 WL1248935, at *3 (D.N.J. Apr. 30, 2025) (dismissing an amended complaint because it "fail[ed] to specify any of Defendants' misconduct with enough specificity … [i]nstead, the Amended Complaint exclusively feature[ed] group pleading").

Plaintiff's argument that "[Defendant's] falsified records were essential to the placement of the policies that breached the Independent Producers' contractual obligations" is unavailing. (Opp. at 19.)  Paragraph 82(g) alleges Defendant helped the JC Marketing Enterprise submit "at least a dozen" policies to Columbus Life out of allegedly 600, about 250 of which actually resulted in policies being established.  The Court is not persuaded these allegations show Defendant's alleged conduct was "instrumental" to the scheme.  (*See* Compl. ¶¶ 26, 82(g).)  Therefore, Count VII of the Complaint is **DISMISSED** without prejudice against Defendant.

### E.  <u>Unjust Enrichment Claim (Count VII)</u>

Similar to the tortious interference claim, Plaintiff asserts it has "conferred benefits on Dr. Cheng" and that Dr. Cheng has "retained the benefits of … participation [in the JC Marketing Enterprise] and financial advantages of continued involvement" by relying on group pleading. (Opp. at 20; *id.* ¶¶ 152-57.)  The heart of the unjust enrichment claim is that Defendant received "millions of dollars in commissions, the fruits of which have benefited all Defendants directly or

14

indirectly." (Compl. ¶ 153.) This allegation is adequate as to the JC Marketing Defendants, because Plaintiff specifically alleged and demonstrated through its exhibits that it entered contracts to provide JC Marketing with commissions. (*See id*. ¶¶ 23, 24, 31; ECF No. 1, Exhibits A-I.)

However, Plaintiff has not shown, nor has it alleged with the required level of plausibility, that Defendant received payment out of the commissions offered to the JC Marketing Defendants or received any other form of payment. Therefore, Plaintiff fails to allege a claim for unjust enrichment, which requires some showing of a benefit retained by the Defendant. *See Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) ("To establish a claim for unjust enrichment under New Jersey law, a plaintiff must show both that defendant received a benefit.") Accordingly, Plaintiff's claim for unjust enrichment must be **DISMISSED** without prejudice. Defendant's Motion to Dismiss Count VII is hereby **GRANTED**.

### IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (ECF 19) is **GRANTED** as to Counts I, II, V, VII, and VIII. Defendant's Motion is **DENIED** as to Count VI. Counts I, II, V, VII and VIII are hereby **DISMISSED**, without prejudice, against Dr. Cheng and Dr. Wang. Plaintiff is granted leave to file an amended complaint within 30 days of this Opinion. An accompanying Order will follow.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Andre M. Espinosa, U.S.M.J.
       Parties